**EXHIBIT 1**

**Appendix XII-B1**



# CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),** if information above the black bar is not completed or attorney's signature is not affixed

FOR USE BY CLERK'S OFFICE ONLY
PAYMENT TYPE: ☐ CK ☐ CG ☐ CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Ari Marcus, ESQ | (732) 695-3282 | Bergen |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Marcus & Zelman, LLC | |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 1500 Allaire Avenue Suite 101 Ocean, NJ 07712 | Complaint |
| | JURY DEMAND ☐ YES ■ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Fabian Arkliss, Plaintiff | Fabian Arkliss, for himself and all others similarly situated, Plaintiff v. Nissan Extended Services North America, Inc. and Difeo Nissan Partnership d/b/a Hudson Nissan, Defendant |

| CASE TYPE NUMBER (See reverse side for listing) 699 | HURRICANE SANDY RELATED? ☐ YES ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☒ NO |
|---|---|---|

IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

| RELATED CASES PENDING? ☐ YES ☒ No | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES ☐ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) ☐ NONE ☐ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ YES ☒ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) ☐ FAMILIAL ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ☒ YES ☐ No |
|---|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED? ☐ YES ☒ No | IF YES, FOR WHAT LANGUAGE? |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

ATTORNEY SIGNATURE:

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under Rule 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
- 151 NAME CHANGE
- 175 FORFEITURE
- 302 TENANCY
- 399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502 BOOK ACCOUNT (debt collection matters only)
- 505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506 PIP COVERAGE
- 510 UM or UIM CLAIM (coverage issues only)
- 511 ACTION ON NEGOTIABLE INSTRUMENT
- 512 LEMON LAW
- 801 SUMMARY ACTION
- 802 OPEN PUBLIC RECORDS ACT (summary action)
- 999 OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
- 305 CONSTRUCTION
- 509 EMPLOYMENT (other than CEPA or LAD)
- 599 CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605 PERSONAL INJURY
- 610 AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621 UM or UIM CLAIM (includes bodily injury)
- 699 TORT – OTHER

### Track III - 450 days' discovery
- 005 CIVIL RIGHTS
- 301 CONDEMNATION
- 602 ASSAULT AND BATTERY
- 604 MEDICAL MALPRACTICE
- 606 PRODUCT LIABILITY
- 607 PROFESSIONAL MALPRACTICE
- 608 TOXIC TORT
- 609 DEFAMATION
- 616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617 INVERSE CONDEMNATION
- 618 LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
- 156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303 MT. LAUREL
- 508 COMPLEX COMMERCIAL
- 513 COMPLEX CONSTRUCTION
- 514 INSURANCE FRAUD
- 620 FALSE CLAIMS ACT
- 701 ACTIONS IN LIEU OF PREROGATIVE WRITS

### Multicounty Litigation (Track IV)
- 271 ACCUTANE/ISOTRETINOIN
- 274 RISPERDAL/SEROQUEL/ZYPREXA
- 281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282 FOSAMAX
- 285 STRYKER TRIDENT HIP IMPLANTS
- 286 LEVAQUIN
- 287 YAZ/YASMIN/OCELLA
- 289 REGLAN
- 290 POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291 PELVIC MESH/GYNECARE
- 292 PELVIC MESH/BARD
- 293 DEPUY ASR HIP IMPLANT LITIGATION
- 295 ALLODERM REGENERATIVE TISSUE MATRIX
- 296 STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
- 297 MIRENA CONTRACEPTIVE DEVICE
- 299 OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
- 300 TALC-BASED BODY POWDERS
- 601 ASBESTOS
- 623 PROPECIA
- 624 STRYKER LFIT CoCr V40 FEMORAL HEADS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

**Please check off each applicable category**  ☐ Putative Class Action   ☐ Title 59

Gabriel Posner (NJ Atty. ID 137312015)
Posner Law PLLC
270 Madison Ave., suite 1203
New York, New York 10016
(646) 546-5022 – phone
gabe@PosnerLawPLLC.com

Ari H. Marcus (NJ Atty. ID 029662010)
Marcus Law, LLC
1500 Allaire Avenue, Suite 101
Ocean, NJ 07712
(732) 695-3282 – phone
(732) 298-6256 – fax
ari@marcuszelman.com
*Attorneys for Plaintiff and those similarly situated*

| | |
|---|---|
| FABIAN ARKLISS, for himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN EXTENDED SERVICES NORTH AMERICA, INC.; and DIFEO NISSAN PARTNERSHIP d/b/a HUDSON NISSAN<br><br>Defendants. | COURT OF NEW JERSEY<br>DIVISION: BERGEN COUNTY<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**INDEX:**_____ |

Plaintiff alleges:

## NATURE OF THIS ACTION

1. Defendants entered into deceptive vehicle service contracts, and violated the terms thereof, in violation of the Moss-Magnusson Warranty Act, 15 U.S.C. §§ 2301 *et seq*.

2. Plaintiff brings claims for himself, and those similarly situated, seeking damages, declaratory and equitable relief, attorneys' fees and costs.

## PARTIES AND JURISDICTION

3. Named plaintiff is a natural person and resident of Bergen County, New Jersey.

4. Defendant NISSAN EXTENDED SERVICES OF NORTH AMERICA, INC. (hereinafter: "NESNA") is a Delaware corporation with a principal place of business located at One Nissan Way, Franklin, TN 37067-6367.

5. Defendant DIFEO NISSAN PARTNERSHIP (hereinafter: "Difeo"), operates under the name Hudson Nissan at a car dealership located at 585 Route 440, Jersey City, New Jersey 07305 (such dealership referred to hereinafter as: "Hudson Nissan").

## FACTS

6. On or about April 28, 2015, Plaintiff purchased a used Nissan Altima (the, "Vehicle") at Hudson Nissan, in Jersey City, New Jersey.

7. Plaintiff purchased the Vehicle on credit, as documented in a Retail Installment Contract ("RIC"), by and between Plaintiff and Difeo. See **Exhibit A** attached hereto.

8. A RIC is a common and customary means to finance a vehicle purchase.

9. Contemporaneous with the execution of the RIC, the dealer's interest therein was assigned to Westlake Financial Service ("Westlake"). The RIC states on page 1: "Seller assigns its interest in this contract to Westlake Financial Services."

10. Plaintiff received monthly statements for the RIC solely from Westlake.

11. Plaintiff made all payments on the RIC solely to Westlake.

12. All credit extended to Plaintiff under the RIC accrued interest at the annual rate of 23.99%.

13. Plaintiff was invoiced by Westlake for the RIC and all amounts owed thereunder at the interest rate of 23.99% annually.

14. Plaintiff paid interest on the RIC and all amounts owed thereunder to Westlake, and did so at the rate of 23.99% annually.

15. At the time he purchased the Vehicle, Plaintiff also purchased a "Vehicle Service Agreement," for $1,500. See **Exhibit B**.

16. NESNA is the service contractor for the Vehicle Service Agreement purchased by Plaintiff.

17. The Vehicle Service Agreement provides, subject to the terms therein, for coverage of mechanical breakdown of covered parts.

18. Plaintiff purchased the Vehicle Service Agreement on credit from Difeo.

19. Plaintiff was told the Vehicle Service Agreement would be subject to 0% financing.

20. The Vehicle Service Agreement contains the following language:

| **LIENHHOLDER OR SERVICE PAYMENT PLAN (0% FINANCING)** |
|---|
| NAME |
| WESTLAKE FINANCIAL SERVICES |

21. The representation to Plaintiff that the $1,500 Vehicle Service Contract was subject to 0% financing was false.

22. In fact, the $1,500 Vehicle Service Contract was financed in the same RIC as the Vehicle, and subject to the same 23.99% annual interest rate.

## CLASS ACTION ALLEGATIONS

23. **"NESNA" Class definition**: Count I of this action is brought as a class action on behalf of the following class of individuals (the, "NESNA Class"):

   a. All persons in the United States;

   b. who in the four years preceding the filing of this action and through the date of class certification;

  c. entered into a vehicle services agreement in which NESNA was the services contractor;

  d. where such vehicle services agreement was purchased by such consumer on credit;

  e. where such vehicle services agreement falsely represented zero percent financing for the purchase thereof.

24. **Difeo Class Definition**: Count II of this action is brought as a class action on behalf of the following class of individuals (the, "Difeo Class"):

  a. All persons in the United States;

  b. who in the four years preceding the filing of this action and through the date of class certification;

  c. entered into a vehicle services agreement in which NESNA was the services contractor;

  d. where such vehicle services agreement was purchased by such consumer on credit;

  e. where such vehicle services agreement represented zero percent financing for the purchase thereof; and

  f. where Difeo provided financing for such vehicle services contract at greater than zero percent.

25. Counts I and II of this action are properly maintained as a class action.

26. **Numerosity**. Upon information and belief, the class is so numerous that joinder of all parties is not practical. Plaintiff complaints of standard form service agreements stating

"0% FINANCING"; standard from Retail Installment Contracts charging interest for vehicle service agreements; and standard practices and procedures for charging such interest.

27. **The class is ascertainable.** Upon information and belief, Difeo and NESNA maintain records sufficient to identify class members. NESNA must maintain records of persons with whom it has entered into vehicle service contracts, and, upon information and belief, Difeo maintains records of its sales to consumers and copies of contracts relating thereto.

28. **Common Questions Predominate.** The following are questions of law and fact which are common to class members, and predominate over individual questions:

    a. Whether the vehicle service contract between Plaintiff and NESNA violates the Moss-Magnusson Warranty Act;

    b. Whether Difeo violated the terms of the vehicle service contract between Plaintiff and NESNA, and thus violated the Moss-Magnusson Warranty Act, by charging Plaintiff interest on the purchase of the vehicle services contract;

    c. The amount of damages to which Plaintiff and class members may be entitled for the violations alleged herein.

29. **Plaintiff's claims are typical of class members'.** The legal theories and factual findings that would support Plaintiffs' claims for relief would apply equally to the claims brought on behalf of the class.

30. **Adequacy.** Plaintiff is prepared to adequately represent the class, and has retained competent counsel to do so. No conflicts are foreseen in named Plaintiff acting on behalf of the class.

31. **Superiority.** A class action is a superior means of pursuing the claims alleged herein, because a class action: eliminates the risk of inconsistent results across various forums;

renders the pursuit of these claims economical, whereas individual claims may not justify the expense of litigation; no difficulties are foreseen in maintain this action as a class action.

## COUNT I

### MOSS-MAGNUSSON WARRANTY ACT, 15 USC §§ 2301 *et seq.* AGAINST NISSAN EXTENDED SERVICES NORTH AMERICA, INC.

32. All preceding paragraphs are re-alleged.

33. Count I is brought by Plaintiff for himself, and on behalf of the NESNA class.

34. NESNA entered into a vehicle services agreement with Plaintiff.

35. NESNA entered into a vehicle services agreement with each NESNA Class member.

36. Plaintiff and each NESNA Class member purchased each such vehicle services agreement on credit.

37. Each such vehicle services agreement was false or misleading in stating, in sum or substance, "0% FINANCING."

38. Plaintiff did not purchase a vehicle service contract from NESNA at 0% financing, but rather, at 23.99% annual interest.

39. Each NESNA class member did not purchase a vehicle services agreement at 0% financing, but rather, at financing of some greater cost.

40. NESNA violated 15 USC §2306(b) of the Moss-Magnusson Warranty Act, which requires that a services contract, "fully, clearly and conspicuously discloses its terms and conditions in simple and readily understood language."

41. NESNA failed to comply with the terms of its own vehicle services contract, because it did not finance the purchase thereof at 0% financing.

42. Pursuant to 15 USC §2310(d)(1) of the Moss-Magnusson Warranty Act, NESNA is liable to Plaintiff and NESNA class members for its violations of the Act and its violations of each vehicle services contract it entered into with Plaintiff and NESNA class members.

43. NESNA's violations of the law and violations of its contractual obligations caused damage to Plaintiff and class members for which it is liable.

## COUNT II

### MOSS-MAGNUSSON WARRANTY ACT, 15 USC §§ 2301 *et seq.* AGAINST DIFEO NISSAN PARTNERSHIP

44. All preceding paragraphs are re-alleged.

45. Count II is brought by Plaintiff for himself, and on behalf of the Difeo class.

46. NESNA entered into a vehicle services agreement with Plaintiff.

47. NESNA entered into a vehicle services agreement with each NESNA Class member.

48. Plaintiff and each NESNA Class member purchased each such vehicle services agreement on credit.

49. Each such vehicle services agreement provided for financing at zero percent.

50. Difeo provided financing to Plaintiff for the purchase of the vehicle services contract not at zero percent, but rather, at 23.99%.

51. Difeo provided financing to each class member for the purchase of each vehicle services contract purchased by such class member at an amount greater than zero percent.

52. Difeo violated the terms of each vehicle services contract entered into between each Difeo class member and NESNA.

53. Difeo violated the terms of Difeo Class members' vehicle services contracts, because it charged interest for such contracts, when the terms of such contracts provided for financing at zero percent.

54. Pursuant to 15 USC §2310(d)(1) of the Moss-Magnusson Warranty Act, Difeo is liable to Plaintiff and NESNA class members for its violations of each vehicle services contract it entered into with Plaintiff and NESNA class members.

55. Difeo's violations of the law and violations of its contractual obligations caused damage to Plaintiff and class members for which it is liable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands relief against all defendants as follows:

### *For each of the Classes Alleged herein:*

A. An order certifying the classes alleged herein and providing notice to each of the Classes;

B. An order appointing named Plaintiff and undersigned counsel to represent the Classes alleged herein;

C. Damages for an amount to be shown at trial, but not less than financing paid by class members for NESNA vehicle service contracts in excess of zero percent;

D. Declaratory and equitable relief barring defendants from charging financing in excess of zero percent on NESNA vehicle service contracts;

### *For Name Plaintiff:*

E. Damages for an amount to be shown at trial, but not less than financing paid by Plaintiff for NESNA vehicle service contracts in excess of zero percent;

F. Declaratory and equitable relief barring defendants from charging financing in excess of zero percent on NESNA vehicle service contracts;

*For all Claims:*

G. Attorneys' fees and costs of this action, interest as allowed by law, and all such other relief as this court deems just and proper.

### Jury Demand

Plaintiff demands a trial by jury on all issues subject to trial by jury.

### Designation of Trial Counsel

Pursuant to Rule 4:25-4, Gabriel Posner, Ari H. Marcus, and Yitzchak Zelman are designated as trial counsel for Plaintiff.

### Certification

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party who should be joined in this action at this time.

Dated: February 15, 2018

*/s/Gabriel Posner*
N.J. Atty. ID 137312015
Posner Law PLLC
270 Madison Avenue, Suite 1203
New York, New York 10016
Phone: (646) 546-5022
gabe@PosnerLawPLLC.com
*Counsel for Plaintiff*

*/s/ Ari H. Marcus*
NJ Atty. ID 029662010
Marcus Law, LLC
1500 Allaire Avenue
Ocean, NJ 07712
(732) 695-3282 – phone
(732) 298-6256 – fax
ari@marcuszelman.com
*Counsel for Plaintiff*

# NISSAN Security+Plus® VEHICLE SERVICE CONTRACT (VSC)

## APPLICATION/DECLARATION

### DEALER
- **DEALER NUMBER:**
- **DEALER NAME:** DIFEO NISSAN PARTNERSHIP DBA HUDSON NISSAN
- **CITY:** 585 ROUTE 440
- **STATE:** JERSEY CITY NJ 07304
- **PHONE:** (201) 435-2003

NISSAN EXTENDED SERVICES NORTH AMERICA
P.O. BOX 685004
FRANKLIN, TN 37068-5004

**CONTRACT NUMBER:** R 08054338

### VEHICLE
- **VEHICLE YEAR:** 2010
- **MAKE:** NISSAN
- **MODEL:** ALTIMA
- **VEHICLE ID NUMBER (17-DIGIT VIN):** 1N4AL2AP3AN406299

### APPLICANT
- **LAST NAME:** ARKLISS
- **FIRST:** FABIAN
- **M.I.:** E
- **STREET / P.O. BOX ADDRESS:** [redacted]
- **CITY / STATE / ZIP CODE:** [redacted]
- **A.M. PHONE:** (201) 688-4050
- **P.M. PHONE:** (201) 640-6534
- **APPLICANT EMAIL:**

### LIENHOLDER OR SERVICE PAYMENT PLAN (0% FINANCING)
- **NAME:** WESTLAKE FINANCIAL SERVICES
- **STREET / P.O. BOX ADDRESS:** 4751 WILSHIRE BLVD SUITE 100
- **CITY:** LOS ANGELES
- **STATE:** CA
- **ZIP CODE:** 90010

### PRODUCT TYPE
- [X] RS

### CURRENT ODOMETER READING
49716

### DATE YOU PURCHASED VEHICLE
- **MONTH:** 04
- **DAY:** 28
- **YEAR:** 2015

### DEDUCTIBLE
- N) [ ] $0
- C) [X] $100

### VSC PURCHASE PRICE
1500.00

## NEW VEHICLE PLANS
*(Time begins on manufacturer's original warranty start date, and Mileage begins at zero)*

**GOLD PREFERRED (RC)** (Contract Type C) / **SILVER PREFERRED (RB)** (Contract Type B) / **POWERTRAIN PREFERRED (RA)** (Contract Type A)

J) 24 months/40,000 miles — A) 48 months/60,000 miles — E) 72 months/100,000 miles — I) 60 months/75,000 miles — 7) 84 months/120,000 miles*
K) 36 months/40,000 miles — 4) 48 months/120,000 miles* — 0) 84 months/70,000 miles — C) 60 months/100,000 miles — 8) 96 months/100,000 miles
G) 36 months/45,000 miles — B) 60 months/60,000 miles — F) 84 months/100,000 miles — D) 72 months/75,000 miles — 9) 96 months/120,000 miles*
H) 36 months/60,000 miles — I) 60 months/75,000 miles — 7) 84 months/120,000 miles* — E) 72 months/100,000 miles
L) 39 months/39,000 miles — C) 60 months/100,000 miles — 8) 96 months/100,000 miles — 0) 84 months/70,000 miles
M) 39 months/49,000 miles — 5) 60 months/120,000 miles* — 9) 96 months/120,000 miles* — F) 84 months/100,000 miles
V) 48 months/48,000 miles — D) 72 months/75,000 miles

* 120,000-mile plans and Powertrain Preferred plans not available for Nissan LEAF

## PRE-OWNED VEHICLE PLANS
*(Time begins on vehicle purchase date, and Mileage is added to vehicle's current odometer reading)*

**GOLD PREFERRED (RG)** (Contract Type G) / **SILVER PREFERRED (RN)** (Contract Type N) / [X] **POWERTRAIN PREFERRED (RL)** (Contract Type L)

Eligible: 0-40,000 miles on odometer
- L) 12 months/12,000 miles
- M) 24 months/24,000 miles
- N) 36 months/36,000 miles
- S) 48 months/48,000 miles
- J) 60 months/60,000 miles
- 6) 72 months/80,000 miles

Eligible: 40,001-50,000 miles on odometer
- T) 12 months/12,000 miles
- U) [X] 24 months/24,000 miles
- W) 36 months/36,000 miles
- W) 48 months/48,000 miles
- 5) 60 months/60,000 miles

Eligible: 50,001-60,000 miles on odometer
- P) 12 months/12,000 miles
- Q) 24 months/24,000 miles
- X) 36 months/36,000 miles
- 4) 48 months/48,000 miles
- 7) 60 months/60,000 miles

Eligible: 60,001-75,000 miles on odometer
- V) 12 months/12,000 miles
- Z) 24 months/24,000 miles
- 3) 36 months/36,000 miles

Eligible: 75,001-100,000 miles on odometer
- R) 12 months/12,000 miles
- 2) 24 months/24,000 miles

## CUSTOMER ACKNOWLEDGEMENT

**New Vehicle VSCs:** Coverage begins on the manufacturer's original warranty start date, with mileage beginning at zero, regardless of the vehicle age or odometer reading at the time of sale. ALTHOUGH ANY OR ALL COMPONENTS OR PARTS MAY BE COVERED BY THE MANUFACTURER'S LIMITED WARRANTY, WARRANTY EXTENSIONS, RECALLS OR CAMPAIGNS.

**Pre-Owned Vehicle VSCs:** The contract term begins on the date of purchase and current odometer reading at the time of purchase, ALTHOUGH ANY OR ALL COMPONENTS OR PARTS MAY BE COVERED BY THE MANUFACTURER'S LIMITED WARRANTY, WARRANTY EXTENSIONS, RECALLS OR CAMPAIGNS. The months and miles of the pre-owned contract term purchased are additive to the date and miles on the odometer at the time of purchase. The VSC continues until the expiration date or expiration mileage listed in the Application/Declaration is reached, whichever occurs first.

Nissan Extended Services North America (NESNA) reserves the right to accept, correct, modify or refuse any VSC Application/Declaration. Claims within the first 90 days and/or 3,000 miles of the effective date are subject to review and/or denial for a pre-existing condition. NESNA reserves the right to reject any application or contract for any reason at its discretion upon return of the full amount paid.

[ ] **WA Residents:** By initialing this box, YOU acknowledge that YOU have received the attached VSC which contains information on material conditions that YOU must meet to maintain coverage, including, but not limited to: the maintenance schedule to which YOU must adhere; the requirement to document repair and maintenance work; the procedures for filing claims; the work and parts covered by the VSC; the time and mileage limitations; the exclusions of coverage; the right to return the VSC for a full refund; the implied warranty of merchantability of the motor vehicle is not waived if the VSC has been purchased within ninety (90) days of the purchase date of the motor vehicle from a provider who also sold the motor vehicle covered by the VSC. Nissan Security+Plus is administered by Nissan Extended Services North America, GP.

I agree that my VSC is being issued in accordance with the information contained in this Application/Declaration and is subject to the terms and conditions stated therein. I understand that purchase of this VSC is not required in order to purchase or obtain financing for a motor vehicle.

**I agree that maintenance of the above-described vehicle, in accordance with factory standards in the Owner's Manual, is a condition precedent to the coverage under this VSC.** A deductible, if applicable, applies per visit where a covered component is repaired. Please review the attached VSC before signing this Application/Declaration. Please call 1-800-NISSAN-1 if you have any questions.

X _[signature]_ 04/28/2015    X _[signature]_ 04/28/2015
APPLICANT'S SIGNATURE    DATE      AUTHORIZED DEALER'S SIGNATURE    DATE

NES-ESC-426 05/12-    100M 0814

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| FABIAN F. ARKLISS | N/A | DIFEO NISSAN PARTNERSHIP DBA HUDSON NISSAN 585 ROUTE 440 JERSEY CITY NJ 07304 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2010 | NISSAN ALTIMA | 1N4AL2AP3AN406299 | Personal, family, or household unless otherwise indicated below<br>☐ business ☐ agricultural ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $1000.00 |
|---|---|---|---|---|
| 23.99 % | $ 8571.47 | $ 13843.54 | $ 22415.01 | $ 23415.01 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 51 | 439.51 | Monthly beginning 06/12/2015 |
| N/A | N/A | N/A |

Or As Follows: N/A

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late. If the vehicle is primarily for personal, family, or household use and the cash price is $ 10,000 or less, the charge for each late payment will be $ 10.
Prepayment. If you pay off all your debt early, you will not have to pay a penalty.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price (including $ 936.04 sales tax) — $ 12308.04
2 Total Downpayment: N/A
  Trade-In (Year) (Make) (Model)
  Gross Trade-In Allowance — $ N/A
  Less Pay Off Made By Seller — $ N/A
  Equals Net Trade In — $ N/A
  + Cash — $ 1000.00
  + Other N/A — $ N/A
  (If total downpayment is negative, enter "0" and see 4J below) — $ 1000.00
3 Unpaid Balance of Cash Price (1 minus 2) — $ 11308.04
4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts):
  A Cost of Optional Credit Insurance Paid to Insurance Company or Companies
    Life — $ N/A
    Disability — $ N/A — $ N/A
  B Other Optional Insurance Paid to Insurance Company or Companies — $ N/A
  C Official Fees Paid to Government Agencies
    to N/A for N/A — $ N/A
    to N/A for N/A — $ N/A
    to N/A for N/A — $ N/A
  D Optional Gap Contract — $ 500.00
  E Supplemental Title Fee — $ N/A
  F Vehicle Tire Fee — $ N/A
  G Government Taxes Not Included In Cash Price — $ N/A
  H Government License and/or Registration Fees
    REG — $ 51.50
  I Government Certificate of Title Fees — $ 85.00
  J Other Charges (Seller must identify who is paid and describe purpose)
    to N/A for N/A — $ N/A
    to DIFEO NISSAN PART for DOC FEE — $ 399.00
    to SECURITY PLUS for POWERTRAIN — $ 1500.00
    to N/A for N/A — $ N/A
    to N/A for N/A — $ N/A
    to N/A for N/A — $ N/A
    to N/A for N/A — $ N/A
    to N/A for N/A — $ N/A
    to N/A for N/A — $ N/A
  Total Other Charges and Amounts Paid to Others on Your Behalf — $ 2535.50
5 Amount Financed (3 + 4) — $ 13843.54

**Insurance.** You may buy the physical damage insurance the contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
  Credit Life $ N/A
  Credit Disability $ N/A
Insurance Company Name N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the amount financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life or credit disability insurance provides. See the policies or certificates for coverage limits and other terms and conditions. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ N/A — N/A
  Type of Insurance — Term
  Premium $ N/A
  Insurance Company Name N/A
  Home Office Address N/A
  N/A

☐ N/A — N/A
  Type of Insurance — Term
  Premium $ N/A
  Insurance Company Name N/A
  Home Office Address N/A
  N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A _____ N/A
Buyer Signature                    Date

X N/A _____ N/A
Co-Buyer Signature                 Date

**Returned Check Charge:** You agree to pay a charge of $ 20 if any check you give us is dishonored and the law allows it.

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A , Year N/A . SELLER'S INITIALS N/A

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within N/A days after it is due, you will pay a late charge of $ N/A or N/A % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-in-Lending Disclosures" still applies.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 51 Mos. UAC IBEX GAP
                                    Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X _____

### NO COOLING OFF PERIOD
**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _____ Co-Buyer Signs X N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**NOTICE TO RETAIL BUYER**
Do not sign this contract in blank.
You are entitled to a copy of the contract at the time you sign.
Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 04/28/15 Co-Buyer Signs X N/A Date N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A                         Address N/A
Seller Signs DIFEO NISSAN PARTNERSHIP DBA HUDSON NISSAN   Date 04/28/15 By X _____ Title F.I.

Seller assigns its interest in this contract to WESTLAKE FINANCIAL SERVICES (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   X☒ Assigned without recourse   ☐ Assigned with limited recourse
Seller DIFEO NISSAN PARTNERSHIP DBA HUDSON NISSAN By _____ Title F.I.

ILaw FORM NO. 553-NJ

ORIGINAL LIENHOLDER

1. **FINANCE CHARGE AND PAYMENTS**
   a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. Security Interest.
   You give us a security interest in:
   • The vehicle and all parts or goods put on it;
   • All money or goods received (proceeds) for the vehicle;
   • All insurance, maintenance, service, or other contracts we finance for you; and
   • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. Insurance you must have on the vehicle.
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest to the extent permitted by applicable law. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.
   If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. What happens to returned insurance, maintenance, service, or other contract charges. If we get a refund on insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
   
   If you pay late, we may also take the steps described below.
   b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   • You do not pay any payment on time;
   • You give false, incomplete, or misleading information on a credit application;
   • You start a proceeding in bankruptcy or one is started against you or your property; or
   • You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. You may have to pay collection costs. If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits. If the vehicle is primarily for personal, family, or household use and the cash price is $10,000 or less, the maximum attorney's fee you will pay will be $100 plus 10% of the excess over $500 of the amount due when we hire the attorney.
   d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. Servicing and Collection Contacts.
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. Applicable Law
   Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-NJ 4/14